Bateman *v.* Connor et al.

MOSES BATEMAN, Survivor of MOSES BATEMAN and AMOS FITHIAN, Trustees of LORENZO LAURENCE, *against* WILLIAM CONNOR and BENJAMIN JAGGERS.

### IN CASE.

A. makes an assignment to B. and C. of all his property, to be sold by them for the payment of his debts. The creditors of A. not allowed to offset their demands against A. in payment of articles purchased at the vendue made by B. and C. of the goods of A.

And although B. invites creditors of A. to purchase, by telling them they may offset their demands against A. in payment, yet if, after this invitation, articles of vendue are publicly declared at the sale which contain no such stipulation in favor of creditors, such offset will not be allowed.

This was an action of assumpsit, tried before his honor Justice Rossell, at the Cumberland circuit. The declaration was for the value of one-half of the sloop called the Ann and Betsey, sold to the defendants for $920. The defendants pleaded non-assumpsit, and also specially, "that Lorenzo Laurence was indebted to the defendants in the sum of $1200 for goods sold, and, being so indebted, he made an assignment of all his property to Amos Fithian and Moses Bateman, for the purpose of satisfying and paying the said defendants, creditors of the said Lorenzo Laurence, and avers that the said vessel, called the Ann and Betsey, was assigned by said Lorenzo Laurence to said Amos Fithian and Moses Bateman, and by them, as the assigns or agents of said Lorenzo Laurence, sold and delivered to the said defendants, in part payment of the said sum of $1200 due from the said Lorenzo Laurence to the said defendants, which said sum exceeded the damages mentioned in the declaration, and out of which the said defendants were willing, and offered, to set off and allow to the said Amos Fithian and Moses Bateman, the full amount of the said damages, according to the form of the statute," &c.

To this plea was subjoined a notice of offset, in substance, the same as the plea. The jury found a verdict for the defendants for $454.20, which sum was immediately remitted by them upon the record. The plaintiff obtained a rule to shew cause why the verdict should not be set aside, and a new trial granted. The reasons for granting the new trial sufficiently appear in the opinions delivered.

*Giles*, for plaintiff. *Jeffers*, for defendant.

KIRKPATRICK, C. J. It appears by the case stated, that one Lorenzo Laurence, being indebted to sundry persons on the 14th of April, 1817, made an assignment of all his property to Moses Bateman, the above plaintiff, and Amos Fithian, now deceased, as trustees, to be sold for the payment of all his debts. That Bateman and Fithian, May 7, 1817, sold the said property at public auction; that the conditions of the sale, as written and proclaimed, were, that all sums under three dollars should be paid in cash, and all above three dollars, in notes at sixty days, with security, *if required;* that at this auction they sold to Connor and Jaggers, the defendants, the one-half of the sloop Ann and Betsey, for the sum of $920; and that for this sum this action is brought.

The defendants pleaded payment with notice of set-off; and, on the trial, they offered to prove by one David Whitaker, and were permitted to prove, though the evidence was objected to, that Fithian, one of the trustees, a few days before the vendue, requested the witness to see Connor and Jaggers, and desire them to attend the sale of Laurence's property; and to inform them, that whatever purchases they should make, should be considered as in payment of the debt due to them from Laurence, and should be set-off against it accordingly. They then offered to prove, and to give in evidence, and by permission of the court, after objection made, did prove and give in evidence, the three promissory notes

made to them by Laurence, and specified in the notice accompanying their plea, and their they rested their defence.

Upon this evidence the jury rendered a verdict for the defendants for $454.20, which sum was immediately remitted by them upon the record.

That these defendants could not make this set-off upon general principles, is a position too clear to admit of argument. It may be likened to a purchase made at the sales of executors or administrators, or of the assignees of a bankrupt's estate, in which cases, as well as many others, though the purchaser may have a just demand against the estate, yet he cannot make a set-off, but must pay the purchase money in the first place, because he is not, necessarily, to receive his whole debt, but a rateable proportion of it only; otherwise one creditor might swallow up the whole estate, which the law will not permit. The conduct of the defendants themselves, too, is confirmatory of this principle, because if their set-off was a matter of right upon the general principles of the law, then the balance found in their favor would have been a just balance against the estate upon which they would have been entitled to their rateable proportion of the property assigned, and, therefore, could never have been remitted upon rational principles.

The right of the defendants, therefore to set-off in this case, if any they had, must depend, not upon general principles, but on special contract. Let us see, then, what that contract is. Fithian, one of the trustees, some days before the sale, made an offer, through a third person, to the defendants, that if they would purchase at the sale, the amount purchased should be set-off against their debt due from Laurence. But then, at the day of sale, there were written conditions publicly proclaimed, which contained no such stipulation in favor of these defendants, or anybody else, but, on the contrary, required payment of every body, either in cash, or in notes at sixty days.

It is to be observed upon this state of the case—1. In the first place, that Fithian alone could not make a contract that would bind the trustees. The power of the trustees is joint and not several, one cannot contract alone.

2. In the second place, even if he could make such contract, yet what he said in this case was but an offer, which the defendants never accepted before the sale in such way as to close the contract, and they cannot be at liberty, after the sale, to make it a contract, or not, as they please. In that case, it would be a contract on one side, and not on the other, which cannot be.

3. In the third place, the written conditions made by both the trustees, and publicly proclaimed at the time of the sale, necessarily supersede the offers made by one of them only, at any previous time. It is a declaration by both, that, upon consultation, they have not agreed to the proposal made by the one only.

4. In the fourth place, unless the contract were so complete, definite and binding, as that it could not be overcome, it ought not to prevail in this case, because it is contrary to the nature of the trust, to the duty of the trustees, and to the rights of other creditors ; for the property is assigned to pay the debts *in toto*, if sufficient, and *pro rata*, if not. Such a contract, therefore, would be a direct invasion of the rights of other creditors. It would be appropriating the property assigned for the benefit of all, to the benefit of a few only.

I am of opinion, therefore, that the jury have mistaken the law in making up their verdict in this case, and, therefore, that the verdict must be set aside, and a new trial granted.

Ford J. This case comes before the court on a rule to shew cause why the verdict obtained by the defendants should not be set aside, and a new trial ordered. The case appeared to be as follows : Lorenzo Laurence assigned and conveyed all his goods to Moses Bateman and Amos Fithian,

*in trust, to divide the avails thereof equally among his credi-tors.* The trustees made sale of these goods at auction, when the sloop Ann and Betsey was struck off to the defendants, at $920. The condition of these sales was in writing, and, at the opening of the auction, was read pub-licly by the cryer, that for all sales above $3, purchasers should give their notes at sixty days, with security, if required. The defendants took and converted the sloop to their own use, and, to an action for the money, pleaded, that the sloop was sold to them *in payment of a debt owing to them by Lorenzo Laurence.* In support of the issue, David Whitaker testified thus : " Amos Fithian told me, he hoped the creditors would generally attend, or the goods would go for nothing; I told him, I understood they intended to make the creditors give notes for what they bought; he replied, that what I bought should be offset against the note I held against Laurence; and he asked me to see Connor and Jaggers, and tell them to attend also. I accordingly told them what he said. I understood him to say, that purchases by any creditors (not me alone) should be offset; I meant to convey the idea to Connor and Jaggers, and I believe I did, that what they purchased should be offset against their debt." The defendants then gave in evidence three notes against Laurence, exceeding the amount of the sloop by $454.20. The court charged the jury, that the assignees are not only agents for the debtor, but trustees for the creditors, and had a right to make any arrangement with the creditors ; and if the jury believed that the defend-ants purchased under this arrangement, their verdict would be accordingly. The jury found a verdict of $454.20 *for the defendants,* which amount the defendants remitted on the record.

Lorenzo Laurence yielded up, irrevocably, all right and title to these goods, and they became *the property of the trustees in law.* If, then, the trustees were *owners,* they could not hold as *agents,* for the two characters are incom-

patible in their nature. The power of agents is revocable, but this assignment was absolute; the authority of an agent is subordinate to his principal, but here the trustees were owners and principals. If the plaintiffs sold as *agents for Laurence*, then the sale was *made by Laurence*, and he, only, could maintain an action for the price of the sloop. Agents and their principals are one in law, and, therefore, the jury had a plausible reason for finding $454.20 against the plaintiff, because Laurence owed so much to the defendants; but the principle itself was wrong. The trustees were independent owners of the property in law, and sold it in their own names and right.

There is another reason of equal or superior weight in my mind, for granting a new trial in this case, which is, that the verdict finds the issue for the defendants wholly contrary to evidence. Their only witness to prove an agreement to offset was David Whitaker, by whom Amos Fithian sent an invitation to Connor and Jaggers, as creditors, to attend the auction, with an *offer*, that their demands against Laurence should be an offset against what they might bid. I say nothing about the questionable manner in which this evidence was detailed, not as what Fithian *said*, but from what he did say, how the witness understood or interpreted his *meaning*. I also pass over the fact of this offer, in case it was really made by Amos Fithian, *only one of the trustees*, not being concurred in by the other, and that it was in direct violation *of their trust*. It was an indiscreet offer, and most expressly and publicly *revoked before the sale*. Whitaker says, it was an offer, as he understood it, *to all creditors*. Granted. But, after this period of time, and just as the auction was about to commence, the trustees declared publicly the condition of sale; they reduced it to *writing*, for fear of mistake, and caused it to be read and proclaimed by *their cryer*, in which no privilege of offset was contained, but, on the contrary, that "all purchasers above $3 were to give their notes for the money in sixty days,

with security, if required." Every bid, made and accepted at the auction, was made and accepted on this condition, *in point of law*. Yet the jury have found directly contrary to the only condition *proved*, and in favor of a condition that, if proved, was *legally revoked* before the sale began. After such revocation, and the publication of *written conditions*, it is not conceivable that Connor and Jaggers *supposed* there were any others. Such a supposition would go to impugn the *legal right* of executors, administrators and all persons, to prescribe the conditions under which they sell. This verdict is also contrary to the *justice of the case*. Connor and Jaggers, as *cestui que* trusts are entitled to their equal and rateable proportion, and *equality is equity;* but in this way they will swallow up the rights of all the other creditors.

Let the rule for new trial be granted.